UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

MAY 1 8 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-312-GWU

DEBRA ROBBINS,                                               PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to appeal the unfavorable portion of a partially

favorable decision on her application for Supplemental Security Income (SSI). The

appeal is currently before the Court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled.  If no, proceed to Step 2.
      See 20 CFR 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
      claimant is not disabled.  See 20 CFR 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities?  If yes, proceed to
      Step 4.  If no, the claimant is not disabled.  See 20 CFR
      404.1520(c), 404.1521, 416.920(c), 461.921.

1

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a

2

Robbins

reasonable mind might accept as adequate to support a conclusion. . ." <u>Wright v. Massanari</u>, 321 F.3d 611, 614 (6th Cir. 2003) <u>(quoting</u> <u>Kirk v. Secretary of Health and Human Services</u>, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these

3

symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's

allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an
> underlying medical condition. If there is, we then examine: (1)
> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment. The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987). Further, a failure to seek treatment for a period of time may be a factor to be

4

considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and

Robbins

analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term

6

Robbins

"framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Debra Robbins, filed an application for SSI benefits alleging disability beginning October 23, 2000 due to lower back pain and related problems, and "nervousness." (Tr. 204-5). An Administrative Law Judge (ALJ) initially awarded benefits in a decision dated February 1, 2002 (Tr. 88-92), but the Appeals Council remanded the case for further consideration of the plaintiff's mental impairments, as well as other issues. (Tr. 103-5). The ALJ obtained new evidence and completed his current decision on August 20, 2003, finding that there were two periods at issue. From the period of October 23, 2000 to October 7, 2002 ("the first period"), the ALJ found that Mrs. Robbins had "severe" impairments consisting of major depression, generalized anxiety disorder with panic attacks, chronic pain syndrome, and a history of a musculoligamentous strain. (Tr. 17). He found that,

7

Robbins

for this period, Mrs. Robbins would have the residual functional capacity to perform light level exertion, with no sitting, standing, or walking more than 30 to 60 minutes without a position change (up to six hours a day for each activity), but she was precluded from work requiring more than moderate amounts of bending and stooping, and had no useful ability to sustain attention to perform even simple, repetitive tasks, to relate to others, or to tolerate the stress and pressures associated with day-to-day work activities. (Tr. 21-2). Accordingly, the ALJ found that she was "disabled" for the first period. The ALJ found that the second period began October 8, 2002 and continued through the date of the decision, August 20, 2003. During this time Mrs. Robbins had "severe" impairments consisting of an adjustment disorder with mixed anxiety and depressed mood, a chronic pain syndrome, and a history of a musculoligamentous strain. (Tr. 17). For the second period, Mrs. Robbins had the same physical restrictions as the first period, but her psychological condition had improved so that she had a "fair" ability to perform complex instructions, a "fair to good" ability to behave in an emotionally stable manner, relate predictably in social situations, demonstrate reliability, perform detailed job instructions, function independently, deal with work stresses, interact with supervisors, deal with the public, and relate to co-workers, and had a "good" ability to maintain personal appearance, perform simple instructions, follow work rules, use judgment, and function independently. (Tr. 22).

Robbins

Stating that he based his conclusion, in part, on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Robbins retained the residual functional capacity during the second period to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits.  (Tr. 23-5).

On appeal, this Court must determine if the administrative decision is supported by substantial evidence.

The crux of the Appeals Council's remand, and of the plaintiff's appeal, is her psychological condition.  No challenge is made to the ALJ's choice of hypothetical physical factors, but the Court notes in passing that the hypothetical physical factors are supported by the conclusions of an orthopedic examiner, Dr. David Muffly (Tr. 265-6), and no treating, examining, or reviewing source listed greater restrictions.

The primary evidence regarding the plaintiff's mental condition comes from two one-time mental status examiners.

Dr. Rosa Kathleen Riggs, a psychologist, examined Mrs. Robbins on April 25, 2001. She noted that the plaintiff's affect was depressed, sad, anxious, irritable and angry, although her attention and concentration were adequate for the interview. (Tr. 267). She was on no medications either for nerves or physical pain. (Tr. 269).  Since stopping work, Mrs. Robbins stated that she picked up nothing heavier than "the remote," that pain caused her to be irritable, and that she did not like to be around people. (Tr. 270).  At times she felt like killing herself, she had panic attacks three

9

to four times a day, she was hearing voices and seeing things that were not there, and would not even answer her door. (Tr. 271). Dr. Riggs diagnosed a major depressive disorder, generalized anxiety disorder with panic attacks, "chronic pain with both psychological factors and a general medical condition," and assigned a Global Assessment of Functioning (GAF) score of 50. (Tr. 271-2). A GAF score in this range reflects serious impairment in social, occupational, or school functioning. Diagnostic And Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34. Dr. Riggs prepared a functional capacity assessment opining that the plaintiff had "poor or no" ability in all areas of occupational, performance, and personal-social adjustment except for a "fair" (defined as "seriously limited but not precluded") ability to demonstrate reliability. (Tr. 273-4).

The plaintiff apparently made one visit to a Comprehensive Care Center (CCC) in March, 2002, almost a year after Riggs' evaluation, and was given a diagnosis of "rule out" adjustment disorder with mixed anxiety and depressed mood, and assigned a current GAF score of 68. (Tr. 160). A GAF score of 68 reflects only mild symptoms. DSM-IV-TR, supra.

Dr. Kevin Eggerman, a psychiatrist, conducted a consultative examination of the plaintiff on October 8, 2002. He was given the report of Dr. Riggs to review. (Tr. 119). Mrs. Robbins' chief complaint was of back pain. (Tr. 111). She reported that she had seen a CCC counselor twice on the advice of Dr. Riggs, but she did not

10

Robbins

follow up because she did not feel the treatment was "helpful or needed." (Tr. 112).
She stated that she felt depressed at times, but the depression was "about not
working." (Id.). She denied any suicidal ideation, plan, or intent, and said that she
had never attempted suicide. (Id.). As she had with Dr. Riggs (Tr. 270), Mrs.
Robbins reported that when she had worked at her full-time job, her relationships
with co-workers and supervisors were good (Tr. 112). As far as her daily activities
were concerned, Mrs. Robbins said that she primarily stayed on her couch or in her
bedroom, and did no chores or driving, did not attend church, had no hobbies, had
no friends, and avoided all social interaction. (Tr. 114). She had, however, been
arrested for possession of cocaine earlier in the year. (Id.). Dr. Eggerman noted
some mild anxiety and defensiveness, but no affective distress, irritability, or
agitation. (Id.). Her concentration was fair. (Tr. 115). Dr. Eggerman diagnosed an
adjustment disorder, with an estimated current GAF score of 60-65, while the highest
GAF score for the previous 12 months was 70. (Id.). A GAF score of 60 reflects
moderate symptoms, while scores of 65 and 70 both reflect only mild symptoms.
DSM-IV-TR, supra. Dr. Eggerman also prepared a specific mental residual
functional capacity form listing the restrictions previously set out as accepted by the
ALJ in his decision. (Tr. 117-18).

11

Robbins

Brief subsequent records from the CCC, dated February, 2003, suggest that the plaintiff returned to the facility and was given a diagnosis of adjustment disorder with mixed anxiety and depressed mood, with a GAF of 62. (Tr. 162).

A medical expert (ME), Dr. Suzanne O'Koon, testified at the January 21, 2003 administrative hearing. At the time, no records from the CCC were available, but Dr. O'Koon testified that, based on Exhibits 1F through 24F, there were two different time frames that appeared in the case. (Tr. 59-60). Dr. O'Koon opined that mental illness was not one of the plaintiff's primary problems, and that most of her condition was related to a pain perception, although there was some depression secondary to her inability to work. (Tr. 60-1). She noted that many of the severe conditions the plaintiff reported to Dr. Riggs, such as hallucinations and panic attacks, were not mentioned to Dr. Eggerman, and that, in fact, that the two examiners had been presented with different sets of symptomology. (Tr. 61-2). Dr. O'Koon also noted that approximately five months after telling Dr. Riggs that she did not attend church, she was telling a physical examiner that she did attend church. (Tr. 62). There was also an emergency room report regarding a physical injury as a result of working on a spruce tree that might indicate that the plaintiff was more active than she would report. (Tr. 65). In the ME's opinion, due to the lack of objective testing, it was necessary for the examiners to rely on the plaintiff's statements. (Tr. 69).

12

Robbins

In the ALJ's decision, as previously noted, it was found that the plaintiff was disabled from her alleged onset date up to October 7, 2002, the day before Dr. Eggerman's examination. (Tr. 17, 21-2). From October 8, 2002, the date of Dr. Eggerman's examination and report, the ALJ found that the plaintiff would have the specific functional capacity listed by Dr. Eggerman. (Tr. 22).[1]

The plaintiff argues on appeal that the ALJ did not follow the proper procedures for finding "medical improvement" set out in 20 C.F.R. Section 416.994. However, these procedures concern reviewing cases in which there is a prior final decision, and the plaintiff has been receiving benefits. In the present case, there was no final decision of the Commissioner until the Appeals Council declined to review the ALJ's decision of August 20, 2003. As noted in the Appeals Council's May 10, 2002 remand, the plaintiff was paid "interim benefits" under Section 8001 of Public Law 100-647, which applies to cases in which an ALJ has issued a favorable disability decision "and no final decision is issued within 110 days after the date of the [ALJ's] decision." (Tr. 105). In other words, this is a case in which, as stated in the ALJ's most recent decision, the plaintiff was found to be entitled to a

_____

[1] Although the ALJ purportedly accepted Dr. Eggerman's restrictions in his decision, the relevant hypothetical question to a vocational expert (VE) actually cited a set of restrictions given by a state agency reviewer, Dr. Ilze Sillers, on June 21, 2001. (Tr. 77-9, 318-20). These restrictions are slightly different from Dr. Eggerman's conclusions, but the plaintiff has not raised this issue on appeal, and the ME had previously testified that, in her opinion, Dr. Eggerman's restrictions were consistent with the state agency reviewer's. (Tr. 67). Therefore, the error was harmless.

13

Robbins

closed period of disability, not a termination case. Therefore, the plaintiff's argument is without merit.

The plaintiff also makes the general argument that the ALJ's decision was inadequate because the ME did not have all of the CCC records available for review, but in view of the fact that the CCC records are sketchy, and that the GAF scores listed by them in 2003 are consistent with the "mild" GAF scores given by Dr. Eggerman, the ALJ could reasonably have concluded that the additional evidence would not have provided a basis for changing his decision.

The decision will be affirmed.

This the ____18____ day of May, 2005.

G. WIX UNTHANK
SENIOR JUDGE

14